(No. 31723.—

EDMOND A. BELL, Appellant, *vs.* SCHOOL DISTRICT No. 84 *et al.,* Appellees.

*Opinion filed November 27, 1950.*

RICHARD F. LOCKE, of Glen Ellyn, for appellant.

OSBORN & HERSHMAN, of Franklin Park, (JACK W. OSBORN, of counsel,) for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This is an action in chancery filed by Edmond A. Bell, a taxpayer and resident of School District No. 84, Cook County, Illinois, in his own behalf and in behalf of all other taxpayers within the district similarly situated. He seeks to enjoin the school district, its board of education and the members and officials thereof, from issuing bonds of the district in the principal amount of $80,000, for the purpose of creating a working cash fund under the purported authority of article 20 of the School Code, with respect to sections 20-1 to 20-8, both inclusive. Ill. Rev. Stat. 1949, chap. 122, art. 20.

The complaint alleges that notwithstanding there was filed, in conformity with the provisions of section 20-7 of

the School Code, a petition requesting the board of education to submit to the voters of the district the proposition to issue said bonds, the board of education is nevertheless proceeding with and intends to issue said bonds without first submitting the proposition to the voters of the district at a special election called for that purpose. As further grounds for the injunction, the validity of sections 20-1 to 20-8, inclusive, of the School Code is attacked, the contention being that section 20-8, which was added to the School Code in 1949 by House Bill No. 495 of the Sixty-sixth General Assembly and which provides that a school district might abolish its working cash fund and transfer any balance in such fund to its educational fund, is so inconsistent with other provisions of the School Code that sections 20-1 to 20-8, both inclusive, should be held null and void. It is alleged that section 20-8 is wholly inconsistent with section 20-4, in that said section 20-8 permits the transfer of the moneys in the working cash fund to the educational fund without requiring the same to be repaid to such fund, as is required by section 20-4, and that by reason of such inconsistency, the said sections 20-1 to 20-8, both inclusive, are rendered vague, indefinite and uncertain and should be held null and void.

It is further alleged that by the enactment of House Bill No. 495, the provisions of article 20 of the School Code were rendered wholly inconsistent with article 17, which provides maximum tax rates for levies by school districts for educational purposes, in that said sections contained in article 20 permit the levy and collection of taxes for educational purposes in excess of the maximum limits specified in article 17, and that therefore the said article 20, containing sections 20-1 to 20-8, both inclusive, should be held null and void.

The answer filed by the defendants denied all the material allegations of the complaint and further alleged that the instrument purportedly filed as a petition, mentioned

in the complaint, was not signed by twenty percent of the voters of the district.

Evidence was heard and the court entered a decree in favor of defendants, finding that the petition requesting a referendum vote on the proposition to issue the bonds was not filed in apt time nor signed by the requisite number of voters, and further finding that the provisions of section 20-8 of the School Code are not inconsistent with the other sections of article 20 of said Code or with the provisions of article 17 thereof, and that by the enactment of House Bill 495, sections 20-1 to 20-8, both inclusive, were not rendered vague, indefinite or uncertain in any way. The decree, upon the basis of such findings, dismissed the complaint for want of equity. The cause is before us on direct appeal, the validity of a statute being necessarily involved.

The appellant has made fourteen assignments of error, which, in substance, resolve themselves into two, namely, that the statute in question is invalid, and that the petition was properly signed and filed.

It will be first necessary to pass on the question as to whether the provisions of the sections of article 20 of the School Code are so vague and indefinite that they are null and void. A determination of the question raised as to the validity of the statute is necessary to a correct decision of the case, regardless of whether or not the petition for referendum was sufficient to require a vote upon the proposition to issue the bonds.

Article 20 of the School Code provides for the creation and operation of a working cash fund in school districts having a population of less than 150,000 inhabitants, and prior to 1949 consisted of 7 sections numbered 20-1 to 20-7, both inclusive. In 1949, House Bills 495 and 503 were enacted amending sections 20-4, 20-5 and 20-7 in certain respects not material to the issue here, and adding section 20-8. Section 20-1 authorized, in each school district, the creation, maintenance and administration of a working cash

fund for the purpose of enabling the district to have in its treasury at all times sufficient money to meet demands thereon for ordinary and necessary expenditures for corporate purposes. Section 20-2 provides that bonds may be issued for the purpose of creating such fund, and section 20-3 provides that taxes may be levied for the purpose of providing moneys for the fund. Section 20-4 pertains to the use and reimbursement of the fund. Its provisions, in part, are as follows: "Moneys in the fund shall not be regarded as current assets available for school purposes and shall not be used by the school board in any manner other than to provide moneys with which to meet ordinary and necessary disbursements for salaries and other school purposes and may be transferred in whole or in part to the general funds or both of the school district and disbursed therefrom in anticipation of the collection of taxes lawfully levied for educational or building purposes, or both such purposes." This section also provides that moneys so transferred from the working cash fund shall be reimbursed to such fund from the taxes received by the district in anticipation of the collection whereof such moneys were transferred, and in case the fund is not completely reimbursed therefrom prior to the first day of the eighth month following the month in which due and unpaid real-property taxes begin to bear interest, that the said working cash fund shall be reimbursed for the amount of the deficiency therein from any other revenues accruing to the educational fund, and the school board shall make provisions for the immediate reimbursement of the amount of such deficiency in its next annual tax levy.

Section 20-5 provides that moneys shall be transferred from the working cash fund to the educational or building fund of the district only upon the authority of the school board, which shall from time to time, by separate resolution, direct the school treasurer to make transfers of such sums as may be required for the purposes authorized by

the statute. It is further provided that the resolution shall set forth the taxes in anticipation of which such transfer is made and from which the working cash fund is to be reimbursed. It is further provided that at any time moneys are available in the working cash fund, they shall be transferred to the educational fund and disbursed for the payment of salaries and other school expenses so as to avoid, whenever possible, the issuance of administration tax warrants.

Section 20-6 provides a penalty for wilful violation of any of the provisions of article 20 by a member of the school board or any other person holding any office under the school district.

Section 20-7, insofar as material here, provides as follows: "No school district may issue bonds under this article unless it adopts a resolution declaring its intention to issue bonds for the purpose therein provided and directs that notice of such intention be published at least once in a newspaper published and having a general circulation in the district, if there be one, but if there is no newspaper published in such district then by publishing such notice in a newspaper having a general circulation in the district. * * * If within ten days after the publication a petition is filed with the recording officer of the district, signed by not less than 20% of the voters of the district requesting that the proposition to issue bonds as authorized by this article be submitted to the voters thereof, then the district shall not be authorized to issue such bonds until the proposition has been submitted to and approved by a majority of the voters voting on the proposition at a special election to be called by the governing body for that purpose. If no such petition is so filed, the district may issue the bonds."

Section 20-8, added by House Bill 495 to the School Code in 1949, is, in its entirety, as follows: "Any school district may abolish its working cash fund, upon the adop-

tion of a resolution so providing, and directing the transfer of any balance in such fund to the educational fund at the close of the then current school year. Thereafter, all outstanding taxes of such school district levied pursuant to section 20-3 of this Act shall be collected and paid into the educational fund. Any obligation incurred by such school district pursuant to section 20-2 of this Act shall be discharged as therein provided."

Appellant does not make the claim that article 20 of the School Code, or any of the sections or provisions thereof, was in any respect invalid prior to its amendment in 1949, or that this article, or any section or provision thereof, would now be invalid if section 20-8 had not been added to the article as one of the sections thereof. It is not claimed that sections 20-1 to 20-7, both inclusive of article 20, are inconsistent in themselves or with any other sections of the School Code, except only section 20-8 thereof. The attack on the validity of article 20 is based upon the contention that section 20-8, permitting the abolishment of the working cash fund and the transfer, upon its abolishment, of any balance therein to the educational fund of the district, is so inconsistent with section 20-4 of the School Code, requiring all moneys transferred from the working cash fund to the educational fund to be repaid to the fund, and with other sections of article 20, which provide for the issuance of bonds for the purpose of creating a working cash fund, the levying of taxes for the purpose of providing moneys for the fund, and the infliction of a penalty for unlawfully diverting any sums from the fund, and so inconsistent with the provisions of article 17 of the School Code, providing maximum rates for the levy of taxes for educational purposes, that the meaning of article 20, in its entirety, is by the addition of section 20-8 rendered so vague, indefinite and uncertain that all of the article should be declared null and void.

A legislative act which is so vague, indefinite and uncertain that the courts are unable, by accepted rules of construction, to determine, with any reasonable degree of certainty, what the legislature intended, or which is so incomplete or conflicting and inconsistent in its provisions that it cannot be executed, will be declared to be inoperative and void. (*Mayhew* v. *Nelson,* 346 Ill. 381.) A statute amending a former act operates, as to matters thereafter occurring, precisely as if the amendatory statute had been added to the prior act at the time of its adoption, and the two acts must be construed together and as one statute. (*Holbrook* v. *Nichol,* 36 Ill. 161.) We have held that where two acts or parts of the same act are seemingly repugnant, they should be so construed, if possible, that both the repugnant provisions may stand. *Anderson* v. *City of Park Ridge,* 396 Ill. 235.

The first question presented is as to whether or not the legislature, by adding said section to article 20 of the School Code, nullified and, in effect, repealed article 20, in its entirety. Section 20-8, adopted in 1949, did not purport to, and obviously was not intended to, repeal any part of the School Code, but was intended as an additional section to article 20. There is nothing inconsistent between section 20-8 and the other sections of article 20 which provide for the creation, maintenance and administration of a working cash fund. Also, there is nothing inconsistent between section 20-8 and any of the sections of article 17 of the School Code which prescribe maximum limits for school tax levies. Section 20-8 merely permits any school district to abolish its working cash fund and transfer any balance in the fund to the educational fund of the district, and provides that thereafter any outstanding taxes levied under section 20-3 of the School Code should be collected and paid into the educational fund. It does not make any change, and does not purport to make any change, in

the maximum tax rates or any change in the manner in which the working cash fund is created, maintained or administered.

From our examination, there is nothing in any of the sections of article 20 that is ambiguous or obscure, and there is no uncertainty or conflict as to the meaning of any of its provisions.

Appellant argues that under the provisions of article 20, as it now exists with section 20-8 added, a working cash fund could be created and abolished annually, thus supplementing the educational fund annually, and, in effect, levying taxes annually for educational purposes in excess of the tax limitations in article 17, and that this confusion and inconsistency can only be cured by the holding that section 20-8 is invalid and void. In answer to this, it is sufficient to say that no such case is here presented. It is an established rule that one may not complain of the invalidity of a statutory provision which does not affect him. *City of Edwardsville* v. *Jenkins,* 376 Ill. 327.

As to the petition for referendum, we find the only evidence offered by appellant to support the allegation in the complaint that such petition was signed by twenty percent of the voters of the district and filed with the secretary of the board of education on March 6, 1950, which was the last day for the filing thereof, was the petition itself purporting to bear the signatures of 345 voters of the district, and the letter addressed to the secretary accompanying the petition, which documents were designated as plaintiff's exhibit 1, the envelope in which the same were enclosed, which was designated plaintiff's exhibit 2, and the testimony of the secretary of the board that she found plaintiff's exhibits 1 and 2 on the porch of her home on the morning of March 7, 1950. The petition contained a statement describing the signers thereof as numbering twenty percent of the qualified electors residing in the school district. The letter accompanying the petition

contained a typewritten notation underneath the signature of the writer of the letter, as follows: "Time delivered to home 11:30 P.M. March 6, 1950." The envelope in which the letter and petition were contained was addressed to the secretary of the board, marked "Personal" and contained thereon the written endorsement: "March 6th 11:30 P.M."

The secretary of the board of education testified on behalf of appellees that she was directed by the board to take a census of the school district for the years 1949 and 1950; that the census for the year 1949 was completed June 13, 1949, and the census report showed the total population of the district to be 6317, and that 2363 of such persons were under the age of 21 years and 3954 over said age; that the census for the year 1950 was completed June 21, 1950, and the census report showed the total population of the district to be 6946, and that 2721 of such persons were under the age of 21 years and 4225 over said age; and that on July 17, 18, 19, 1950, she made a supplementary survey in the newer sections of the district, during the course of which she interviewed 288 persons, of whom 286 were found to have been qualified voters of the district on March 6, 1950. She further testified that she had been a resident of the district for 27 years, had been a member of the board of education for 24 years, and had served either as judge or clerk of the annual school elections in the district six or eight times, that she was well acquainted with a majority of the residents of the older established parts of the district, and that in her opinion practically all of the residents in the older sections of the district are citizens of the United States, and a very substantial majority, if not all of them, are permanent residents of the school district, having resided in the State of Illinois for one year, in the county of Cook for ninety days and in the school district for thirty days.

Appellant contends that this testimony was incompetent and insufficient to establish the fact that the petition was

signed by less than twenty percent of the legal voters of the district. He contends that the petition, having been offered and received in evidence after being properly identified, must be held to be a valid petition in compliance with the statute unless competent evidence to overcome the validity of the petition was presented by appellees. He further argues that the notations upon the letter and envelope, designated respectively as plaintiff's exhibits 1 and 2, indicating that the petition was delivered at the home of the secretary on March 6, 1950, at 11:30 P.M. raises a presumption that the petition was delivered to her home at that time, and that since there was no evidence to contradict this presumption, it must control, and in view of the fact that there was no evidence that she maintained either a regular office or regular office hours for the performance of her duties as secretary of the board of education, such delivery of the petition was effective to constitute a proper filing thereof within the time specified by the statute.

It must be observed that the burden of proof was on appellant to establish the allegations contained in his complaint that the petition was signed by twenty percent of the legal voters of the district and filed with the secretary of the board of education on March 6, 1950. The burden of proof is always on the party having the affirmative of a proposition and it abides with him until a final determination of the proposition. (*City of Carlinville* v. *Anderson,* 303 Ill. 247.) Where a party asks a court to believe a proposition and to base a finding thereon in his favor, the law casts the burden on him of furnishing the evidence upon which such finding can legally rest. (*Prentice* v. *Crane,* 234 Ill. 302.) It is incumbent upon a plaintiff on the trial of the cause to prove all the material allegations contained in his complaint by a preponderance of the evidence. There is no authority in this State, either under judicial decision or statutory enactment, to support appellant's contention that the petition is, in and of itself, evi-

dence that it is signed by twenty percent of the legal voters of the district, as required by the statute. Appellant having offered no proof to sustain his claim that the petition in question was signed by twenty percent of the legal voters of the district, the trial court did not err in refusing to hold that the board of education and its members and officials were acting in violation of section 20-7 of the School Code in proceeding to issue bonds of the district for the purpose of creating a working cash fund without first submitting the proposition of issuing said bonds to the voters of the district. This being so, it is unnecessary to consider appellant's contention that the petition was properly filed within the time provided by the statute.

For the reasons above pointed out, the decree of the superior court of Cook County dismissing the complaint is affirmed.

*Decree affirmed.*