LEO CASANAS, SR., *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. GWEN NELSON, Defendant-Appellant and Cross-Appellee.

Second District   No. 2—84—1077

Opinion filed January 17, 1986.

Terry P. Eland, of Bloomingdale, for appellant.

Mary Robinson and Josette Skelnik, both of Robinson & Skelnik, of Elgin, for appellees.

JUSTICE HOPF delivered the opinion of the court:

Defendant appeals from a judgment of the trial court of Kane County which granted rescission of a contract on grounds of mutual mistake and ordered defendant to pay restitution as well as plaintiffs' costs and attorney fees. Plaintiffs cross-appeal from an order which vacated an earlier judgment but reentered the terms of that judgment.

In this court defendant raises three contentions: (1) that the facts presented to the trial court did not support rescission of the contract; (2) that rescission was improperly granted on the basis of a mistake of law; and (3) that the award of attorney fees was inappropriate. Plaintiffs assign as error the vacation and reentry of a judgment dated later pursuant to defendant's section 2—1401 petition (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401).

Plaintiffs and defendant entered into an installment agreement for warranty deed on June 2, 1981, for the purchase of a parcel of vacant real estate owned by defendant, Gwen Nelson. On May 5, 1982, plaintiffs filed a complaint for rescission of the installment agreement based on fraud and/or mutual mistake and seeking restitution and damages. The matter was tried before the bench. Sometime in January of 1981 plaintiffs, the Casanases, saw a "For Sale" sign on a vacant lot and went to the Century 21 real estate office to inquire about it. They indicated to Dorothy Schilf, the agent who helped them, that they wished to build a two-flat on the lot. Schilf told them that a two-flat could not be built on the lot and suggested other lots, but the Casanases decided they wanted the lot they had first inquired about.

Leo Casanas, Jr., and his sister, Lisette, testified that at their first meeting with the realtor, before any contracts were signed, Schilf showed the family several documents pertinent to the lot: a survey, a document titled "Proposed Septic System," and a document titled "Application for Permit for Sewage Disposal Facilities and Water Supply." They further testified that Schilf pointed out where a house, a well, and a septic tank could be located on the lot; that Schilf told them that defendant-owner Nelson had ordered the permit described above when she was getting ready to build before she moved; and, that Schilf made repeated oral representations to the family that the lot was ready to be built upon.

Dorothy Schilf contradicted certain parts of the Casanases' testimony. She repeatedly testified that she had never shown any of the named documents to the Casanases because she had never had any of them in her possession. She insisted that she was seeing them for the first time at trial, that they had been in the hands of some other realtor in her office, and that she was not sure when they were shown to the Casanases, but suggested it might have been at the closing. Schilf did indicate, however, that she had been told of the existence of the documents by the other realtor, had asked defendant to send them to her, and had told the Casanases that they were available.

Schilf, when asked if she had made oral representations to the Casanases as to whether or not they could build a house on the lot, indicated that she had told them to check with the department of public works of Du Page County (Du Page County) as to what could be built, and that the document pertinent to a septic system would show where a septic field could be located. Leo Casanas, Jr., testified that he relied on what Schilf had told him concerning the suitability of the lot for construction and that he did not contact Du Page County concerning the lot prior to signing the contracts. An offer by the Casanases to purchase the lot was accepted by Nelson in April, and the closing took place on June 2, 1981.

In November 1981, Leo Casanas, Jr., received a letter from Homer Branch of the department of public works of Du Page County, apparently in response to Casanas' request for a building permit. The November 19 letter, which was admitted into evidence, stated that the subject lot was located within a flood hazard in accordance with the United States Housing and Urban Development (HUD) "Floodway and Boundary Maps dated 1977." In his testimony, Casanas claimed that he understood from the letter that the property was not buildable because it was in the floodplain.

Plaintiffs then retained an independent engineer, Peter Jo-

hanknecht, to review the entire matter. Johanknecht did not appear or testify at trial, but a letter he had written to Homer Branch was admitted into evidence. The letter, dated January 13, 1982, referred to enclosures showing the subject lot in relation to the floodplain and requested Branch's "concurrence as to the location of floodplain on the referenced lot." The enclosures were not admitted as evidence. Branch replied by letter of January 21, 1982, that Johanknecht's "information only reflects the period prior to construction of I-90," and that "[t]he new HUD maps \*\*\* reflect this newly constructed highway based on more recent studies," and finally, that "[a] special use permit is required." Branch testified to these same matters at trial but, when asked when the new floodplain maps came into use by the county, he responded as follows:

"A. I would say around 1981.

Q. About 1981. Do you remember approximately when in 1981?

A. I couldn't be specific.

Q. Sometime in that era?

A. Yes. We had—we knew this regulation were [sic] coming, so we were in effect using these regulations. So when they became finalized by the federal government, then they became absolutely official."

Defendant Nelson testified that she had believed the lot to be buildable when she sold it to plaintiffs and the real estate agent, Schilf, "certainly did not think it was an unbuildable lot."

At the conclusion of the trial, the court requested written memoranda and took the matter under advisement. Both parties submitted written closing arguments and supporting memoranda of law as well as reply briefs. At the time plaintiffs filed their reply brief to defendant's closing argument with the trial court, they also filed a petition for award of attorney fees.

Subsequently, the trial court sent a letter dated August 17, 1984, to counsel for both parties setting forth its finding against plaintiffs on the fraud count and for the plaintiffs on the grounds of mutual mistake and awarding restitution, costs and attorney fees. The court requested that a judgment order be submitted no later than August 31, 1984.

An order incorporating all of the above, and making the judgment a lien on the subject real estate, was signed by the judge and date stamped August 17, 1984. On October 12, 1984, defendant filed a motion to vacate the August 17 judgment. Although the statutory authority for the motion is not set forth, it appears that defendant was

acting pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401). Defendant's counsel alleged in the motion that he had failed to file a notice of appeal within the requisite 30 days because, despite due diligence, he had not become aware until October 1 that the judgment order had been entered on August 17. This motion was argued before the bench and revealed the following. Plaintiffs' counsel, Mark Peterson, left a proposed order for the judge with the judge's clerk on or about August 21, 1984. Peterson stated that at that time he inquired as to whether the order would be given the date the letter of opinion was sent by the judge, *i.e.*, August 17, 1984. The clerk said she did not know but would find out. Sometime thereafter the order was signed and date stamped as of August 17, 1984. *Nunc pro tunc* language was not used in the order.

Peterson sent and defendant's counsel, Terry Eland, received a letter dated August 21, 1984, with a copy of the proposed order—not date stamped and not signed—enclosed. Subsequently, Peterson requested by phone that Eland acknowledge receipt of the proposed order in writing. Although Peterson denied it, Eland claimed that in this phone conversation he objected to the clause in the order creating a lien. Peterson also denied Eland's claim that he asked Peterson to advise him of the date the order was entered so he could timely file a notice of appeal. Eland stated that Peterson never told him that he had submitted a proposed order to the judge.

Eland acknowledged receipt of the proposed order, and stated his objection to the lien provision in a letter dated September 5, 1984. Peterson replied in a letter of September 10 that he was surprised by Eland's objection since he had not objected during the earlier phone conversation. This letter did not mention anything regarding the status of the order. Eland claimed at the hearing on the motion to vacate that he had made "numerous phone calls" to the Kane County clerk's office to find out if the order had been entered and each time was told that the last activity in the file was dated August 17, 1984. He said he believed this date reflected the judge's opinion letter since that letter was dated August 17 and he figured the final order would have a later entry date. In a letter dated September 9 Eland again asked Peterson to let him know when the order was entered so he would know the starting date of the appeal period. Peterson's reply, dated September 26, advised that the order had been entered on August 17. Eland moved on October 12 for vacation of judgment and simultaneous reentry so that he would have time to appeal. Defendant's motion was granted. The August 17 judgment was vacated and reentered as of October 12, 1984, and this appeal followed.

■ Plaintiffs contend that defendant's petition for a section 2—1401 (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401) vacation of judgment did not fulfill the requirements for such a petition and should have been denied by the trial court. Section 2—1401 provides for relief from final orders and judgments more than 30 days after they have been entered, upon petition to the court. The petition invokes the equitable powers of the court as justice and fairness require and should be considered in the light of equitable principles. (*Manning v. Meier* (1983), 114 Ill. App. 3d 835, 838, 449 N.E.2d 560.) To that end, the provision should be given a liberal construction. (*Electrical Wholesalers, Inc. v. Silverstein* (1977), 47 Ill. App. 3d 689, 692, 365 N.E.2d 375.) After considering the myriad factors which contributed to the confusion about the date the original trial court order was entered in this case, we conclude that the ends of justice and fairness will be better served by affirming the challenged order of vacation and allowing this appeal to proceed.

It is defendant's position that the trial court erred in granting rescission on grounds of mutual mistake because the evidence at trial did not show that a mutual mistake had ever existed. We agree.

■ In civil matters the burden of proof is always on the party having the affirmative of a proposition. (*Bell v. School District No. 84* (1950), 407 Ill. 406, 416, 95 N.E.2d 496; *General Foods Corp. v. Hall* (1976), 39 Ill. App. 3d 147, 151, 349 N.E.2d 573.) A plaintiff must prove at trial all the material allegations contained in his complaint. (*Bell v. School District No. 84* (1950), 407 Ill. 406, 416, 95 N.E.2d 496.) Plaintiffs seeking rescission on the basis of mutual mistake must prove, as part of their *prima facie* case, that both parties were mistaken as to a material matter. (*Diedrich v. Northern Illinois Publishing Co.* (1976), 39 Ill. App. 3d 851, 857, 350 N.E.2d 857.) The mutual mistake must be shown by clear and positive evidence. (*John Burns Construction Co. v. Interlake, Inc.* (1982), 105 Ill. App. 3d 19, 25, 433 N.E.2d 1126.) Plaintiffs in the case before the court assert in their complaint that both parties were mistaken in their belief that the subject real estate was a "buildable lot, *** suitable for the erection of a single family residence." That belief was misplaced, according to the complaint, because the lot "is situated within the flood hazzard [*sic*] zone, according to the 'U.S. HUD Flood and Building Maps' dated 1977," and thus is not buildable. (Presumably, "flood hazzard [*sic*] zone" is a reference to floodplain and the latter term will be used.) Plaintiffs did not prove these allegations.

Although it is not spelled out in the complaint, the trial testimony indicates that construction on the lot was directly controlled by cer-

tain Du Page County ordinances and regulations. Those regulations both designated specific properties as being in the floodplain, by reference to maps prepared by United States agencies, and imposed restrictions on properties so designated. Plaintiffs' proofs indicate that it is the above designation and restriction by the county that the complaint refers to as making the lot unbuildable. Plaintiffs failed, however, to delineate the precise ordinances that were in effect at the time the parties entered into the contract. In the absence of the content of the applicable ordinances, plaintiffs were unable to show clearly and positively that the parties were mistaken regarding those ordinances, at the time of closing. *John Burns Construction Co. v. Interlake, Inc.* (1982), 105 Ill. App. 3d 19, 25, 433 N.E.2d 1126.

None of plaintiffs' witnesses identified with particularity the relevant ordinances or regulations, or the contents thereof, that were in effect on either the day plaintiffs first spoke with Dorothy Schilf, or the dates the offers were made or accepted (January 21, 1981, April 11, 1981), or the day of closing (June 2, 1981). None of the regulations themselves were admitted into evidence. Virtually all of the correspondence admitted into evidence, as well as the testimony, dealt with events occurring several months after the closing on the property. Homer Branch's letter informing Leo Casanas, Jr., that the lot was in floodplain was dated November 19, 1981. The consulting engineer's letter to Branch was sent on January 13, 1982. All other correspondence is even later.

The January letter from Johanknecht, the engineer retained by the Casanases, to Homer Branch, indicates that a section of a map and a topographic survey were enclosed. These documents were not put into evidence. Of these documents Branch said, "[T]he maps that he used were older maps than the current maps that we use now for determining whether or not the property is or is not in a flood plain [*sic*]." Branch also said the older maps were developed somewhere around 1964 while the new ones were around the later 1970's. Neither set of maps was admitted as evidence. Although Branch said on direct examination that the Casanases could not have built on the lot at the time of contracting unless they complied with county requirements for property located in a floodplain, on cross-examination he was unable to pinpoint the effective date of the new maps, which delineated the floodplain in the county, any closer than "around 1981" and he "couldn't be specific." There is no other testimony—nothing more definite— as to when the new maps became effective. As far as the old maps are concerned, the only testimony was that of Homer Branch regarding Johanknecht's letter to him. Branch did not concur

with Johanknecht's analysis which, according to Branch, was based on the old maps. Since Branch testified that the lot in question was in the floodplain, the implication must be that Johanknecht's analysis showed it *not* in the floodplain.

■ The evidence adduced at trial did not prove that, pursuant to county regulations, the subject property was in a floodplain and unbuildable in June of 1981. At best, plaintiffs may have proved that as of November 19, 1981, the date of Branch's letter to Leo Casanas, Jr., the county required more for the issuance of a building permit than it had prior to that date. Without proof that the county regulations actually restricted construction on the lot at the time of contracting, there is no way to know whether or not the parties were mistaken in their mutual understanding that the lot was buildable. Absent proof of a mutual mistake, plaintiffs failed to make out a *prima facie* case and rescission should have been denied. *Diedrich v. Northern Illinois Publishing Co.* (1976), 39 Ill. App. 3d 851, 350 N.E.2d 857.

■ Alternatively, even if the county regulations indicated that the lot was located in a floodplain, plaintiffs still did not meet their burden because they failed to show that being in a designated floodplain necessarily makes a parcel of real estate unbuildable. If anything, the testimony of Homer Branch, plaintiffs' expert witness, deeply undercuts that concept. Branch testified that if the Casanases had applied for and secured a special use permit from the zoning division, they might have been able to get a building permit. The clear implication is that specific lots might very well be buildable, despite being in the floodplain, once the county requirements are fulfilled. If plaintiffs had applied for and been denied a special use permit on the basis of the location of the lot in a floodplain, then perhaps plaintiffs could have shown that the lot was indeed unbuildable. Leo Casanas, Jr., however, testified that he never applied for a special use permit. Since they never applied for such a permit, plaintiffs cannot now claim the lot is unbuildable.

Plaintiffs argue that they should not be required to pursue what they characterize as the extraordinary administrative procedures involved in securing a special use permit. We do not agree with plaintiffs' characterization. The procedure is administrative, but not at all extraordinary.

Since we have decided that plaintiffs did not establish a *prima facie* case for rescission based on mutual mistake, it is not necessary for us to dispose of the other questions raised by plaintiffs. *Diedrich v. Northern Illinois Publishing Co.* (1976), 39 Ill. App. 3d 851, 350

N.E.2d 857.

For the reasons stated above, that part of the judgment of the circuit court of Kane County granting defendant's section 2—1401 petition is affirmed; that part of the judgment rescinding the contract herein and ordering defendant to pay restitution and legal costs and attorney fees is reversed.

Affirmed in part; reversed in part.

REINHARD and UNVERZAGT, JJ., concur.