UNITED STATES of America, National Rural Utilities Cooperative Finance Corporation and Soyland Power Cooperative, Inc., Plaintiffs,

v.

SOUTHWESTERN ELECTRIC COOPERATIVE, INC., Defendant/Counter-plaintiff,

v.

SOYLAND POWER COOPERATIVE, Counter-defendant.

Cause No. 86–3419.

United States District Court, S.D. Illinois.

Dec. 28, 1987.

---

Larry Steffes, Civ. Div., Dept. of Justice, Washington, D.C., for the U.S.

Brent K. Olsson, Milbank, Tweek, Hadley & McCloy, New York City, for National Rural Utilities Co-op. Finance Corp.

George Von Stamwitz, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., Local Counsel.

R.R. McMahan, Lord, Bissell and Brook, Chicago, Ill., for Soyland Power Co-op., Inc.

James J. Stamos, Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., for Southwestern Elec. Co-op., Inc.

## MEMORANDUM AND ORDER

STIEHL, District Judge:

Before the Court are the parties cross-motions for summary judgment.

This cause was filed by the United States of America on behalf of the Rural Electrification Administration (REA), The National Rural Utilities Cooperative Finance Corporation (CFC), and Soyland Power Cooperative, Inc. (Soyland), seeking a declaratory judgment that the Wholesale Power Contract between Soyland and Southwestern Electric Cooperative, Inc. (Southwestern) is binding and enforceable. Count II of the complaint for declaratory judgment was previously dismissed by this Court.

Plaintiffs seek summary judgment on Count I of the complaint. Southwestern has filed a cross-motion for partial summary judgment on paragraphs 35 and 37 of plaintiffs' complaint.

Southwestern has filed a counterclaim seeking a declaratory judgment that the wholesale Power Contract is void, because of mutual mistake of fact in Count I, and frustration of purpose in Count II.

Fed.R.Civ.P. 56(c) provides that a district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In determining whether a district court properly granted summary judgment, "[a]ll factual inferences are to be taken against the moving party and in favor of the opposing party." *International Administrators, Inc. v. Life Insurance Co. of North America*, 753 F.2d 1373, 1378 (7th Cir.1985). In instances in which "inferences contrary to those drawn by the trial court might be permissible," a district court's grant of summary judgment must be reversed. *Munson v. Friske*, 754 F.2d

683, 690 (7th Cir.1985). Once a motion for summary judgment has been made and properly supported, however, the nonmovant does have the burden of setting forth specific facts showing the existence of a genuine issue of a material fact for trial. *See* Rule 56(e); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983), (noting that "a bare contention that an issue of fact exists is insufficient to raise a factual issue"). Although a requisite, the existence of a factual dispute, nonetheless, is not, standing alone, sufficient to bar summary judgment. It is well settled that a "factual dispute does not preclude summary judgment unless ... the disputed fact is outcome determinative under the governing law." *Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir.), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983), as cited in *Shlay v. Montgomery,* 802 F.2d 918, 920 (7th Cir.1986).

Plaintiffs have asserted that there is no genuine issue of material fact as to the validity and enforceability of the all-requirements contract, and that, therefore, they are entitled to summary judgment. Southwestern asserts that material issues of fact exist by claiming the contract is "void" on the bases of mutual mistake of fact and/or frustration of purpose, and that a jury should determine whether these defenses do, in fact, exist.

The matter is before this Court on diversity jurisdiction, therefore this Court will apply the choice-of-law rules of the State of Illinois. *Baltimore Orioles v. Major League Baseball Players,* 805 F.2d 663, 681 (7th Cir.1986) *cert. denied,* —— U.S. ——, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987). The parties are in agreement that the contract in question was entered into, and is currently being performed, in Illinois, therefore, Illinois contract law principles control this issue. The basic issue underlying these motions is whether the contract between Soyland and Southwestern is binding and enforceable, or whether it is subject to rescission under either the doctrine of mutual mistake of fact, or frustration of purpose.

## MISTAKE OF FACT

■ It should initially be noted that defendants seek to have this Court render the Soyland/Southwestern contract void on the basis of mutual mistake of fact. It is clear from both the Restatement of Contracts and Illinois case law that a contract may be voidable or subject to rescission on this basis, but it is not void on its face.

The Restatement of Contracts 2d at § 151 defines "mistake" as a "belief that is not in accord with the facts." Further, § 152 details when a mistake of both parties makes a contract voidable:

(1) Where a mistake of both parties at the time of contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154.

(2) In determining whether the mistake has a material effect on the agreed exchange of performances, account is taken of any relief by way of reformation, restitution or otherwise.

§ 154 provides:

A party bears the risk of a mistake when

(a) the risk is allocated to him by agreement of the parties, or

(b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or

(c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

In Illinois, the four conditions generally required for a court to rescind a contract are: "that the mistake relate to a material feature of the contract; that it occurred notwithstanding the exercise of reasonable care; that it is of such grave consequence that enforcement of the contract would be unconscionable; and that the other party can be placed in *statu quo.*" *Wil–Fred's Inc. v. Metropolitan Sanitary,* 57 Ill.

App.3d 16, 14 Ill.Dec. 667, 672, 372 N.E.2d 946, 951 (1978), *leave to appeal denied.*

Moreover, the party seeking "rescission on the basis of mutual mistake must prove, as part of [its] *prima facie* case, that both parties were mistaken as to a material matter ... the mutual mistake must be shown by clear and positive evidence." *Casanas v. Nelson,* 140 Ill.App.3d 341, 95 Ill.Dec. 137, 140, 489 N.E.2d 358, 361 (1986); *Wil-Fred,* 372 N.E.2d at 951.

Defendant asserts that both parties had a basic assumption that "the Clinton cost projections, the electrical use projections and the ultimate electrical cost projections provided by IPC (Illinois Power Company), IAEC (Illinois Atomic Energy Commission), REA and others were correct and would allow Soyland to achieve its concept of obtaining a secure source of power at reasonable rates;" and "Southwestern and Soyland were both subjectively and objectively mistaken as to this basic assumption of the contract."

Southwestern's arguments center around the issue of the high price of energy as supplied by IPC to Soyland and then distributed to Southwestern and other rural facilities. In order to succeed, Southwestern must be able to show that price would be a "material term." In support of its assertion that price is a material fact, Southwestern relies on the ruling of the Seventh Circuit in *S.T.S. Transport Service v. Volvo White Truck Corp.,* 766 F.2d 1089 (7th Cir.1985). However, the reliance is unfounded, as *S.T.S.* is both easily distinguishable on its facts, and contains dicta which would preclude Southwestern's argument as to materiality.

In *S.T.S.,* the Seventh Circuit recognized that mutual mistake of fact cases traditionally involve a contract in which "the parties understand a key term differently." 766 F.2d at 1092. The court drew a specific distinction between *mathematical or clerical error* and an *error of judgment.* Although the court stated that the mistake in *S.T.S.* "relates to the price, which must be conceded to be material," 766 F.2d at 1093, the court found the error in the "price"

was best qualified as a mathematical or clerical error.

In simple terms, the mistake in *S.T.S.* concerned two subtractions which were made from the offered base price, when only one should have been made. Approximately $179,000 in the base price difference resulted. The Seventh Circuit found that the offer was as follows: "Volvo White offered to take over the remaining debt on the trade-ins, so that there was nothing in the way of trade-in value to be subtracted from the purchase price. The assessed value was completely offset by the outstanding debt." 766 F.2d at 1093. The court found this error to be "merely" mathematical or clerical, rather than a miscalculation of economic climate.

Although it would be wrong to suppose that "merely" mathematical or clerical errors are easily distinguished from other errors such as those of judgment—a miscalculation about the economic climate, say—the distinction is clear enough for ordinary purposes. A merely mathematical or clerical error occurs when some term is either one-tenth or ten times as large as it should be; when a term is added in the wrong column; when it is added rather than subtracted; when it is overlooked.

. . . .

The error involved here is of that sort, but if anything more difficult to detect. *Id.* Therefore, the Seventh Circuit, in concluding that the error in the price term of the *S.T.S.* contract was clerical in nature, allowed for rescission of the contract.

However, this is not the case in the Soyland/Southwestern contract. Here, Southwestern seeks relief because the price of energy is much higher than originally projected. The Seventh Circuit rejected the proposition that contracts could be rescinded based on errors in judgment, particularly judgment as to the economic climate. "For example, if the mistake resulted from a miscalculation as to the economic climate, to undo the contract would fly in the face of the very reason for having contracts in the first place ... But that problem is solved by excluding miscalculations of

judgment. E. Farnsworth, Contracts 666 (1982)." *Id.* Although Southwestern attempts to use *S.T.S.* to support its position that the issue of price is a material issue, this is clearly inapposite to the ruling in *S.T.S.* Poor judgment as to future economic climate cannot be a basis for rescinding a contract.

It should be noted that Southwestern argues at length that this Court should consider the unrelated case of *Soyland Power and Western Illinois Power v. Illinois Power*, 86–L–373, filed in state court in Sangamon County, Illinois,[1] as support for the theory that a mutual mistake was made by Soyland and Southwestern. In that complaint, Soyland alleges that, due to IPC's deficient performance as a project manager, the costs of the Clinton Power Station are in excess of ten times greater than the original estimates. Southwestern argues in the case before this Court that Soyland cannot sue Illinois Power on these grounds in the state court case, and at the same time deny that a mutual mistake of fact as to the estimates of cost existed in this case. However, this argument is without merit, and Southwestern offers no authority for its position.

The pleadings in the state court case only serve to point up the fact that while all the parties may have thought and believed that the construction costs of the Clinton power plant, and ultimately the costs of power, would be much less than what they have, in fact, become, this is, again, only an error in economic judgment. It fails to establish that a mutual mistake of material fact by Southwestern and Soyland existed at the time they entered into the all-requirements contract sufficient to allow this Court to rescind that contract under Illinois law.

Furthermore, the Ownership Participation Agreement among Illinois Power, Soyland and Western Illinois Power Cooperative at para. 8.9 provides the following:

*Cost Changes.* The Participants are aware that the estimated costs of the Clinton station (including cost of fuel) are subject to change by reason, among other matters, of inflation, compliance with additional governmental requirements, design and equipment changes, and delays in construction and commencement of the operation.

As fully discussed in the prior Order of this Court, Southwestern is one of the fifteen distribution cooperatives that joined together to form Soyland, a generation and transmission cooperative. Southwestern is a member of Soyland and has members who serve on the Soyland board. Therefore, Southwestern was aware of this provision in the participation agreement.

Paragraph 4 of the contract at issue in this case includes a formula for determining the rate of power purchased by Southwestern.

(a) The Member shall pay the Seller for all electric power and energy furnished hereunder at the rates and on the terms and conditions set forth in the then applicable rate schedules. Applicable rate schedules shall be those approved from time to time and adopted by the Board of Directors of the Seller; provided, such rate schedules shall be formulated and adopted in accordance with the procedures and subject to the limitations and requirements set forth in subparagraph 4(b) hereof.

(b) The Board of Directors of the Seller, at such intervals as it shall deem appropriate, shall review the rate for electric power and energy furnished hereunder and under similar agreements with other members and, if in the judgment of the Board, it is necessary, shall revise such rate so that it shall produce revenues which shall be sufficient, but only sufficient, with the revenues of the Seller from all other sources, to meet the cost of the operation and maintenance, (including, without limitation, replacements, insurance, taxes and administrative and general overhead expenses) of the generating plant or plants, transmission systems, and related facilities of the Seller, the cost of any power and energy purchased for resale hereunder by the Seller, the cost of transmission service, to make payments on account of principal

---

**1.** Both parties in their pleadings apparently refer to this case as *Powell v. WIPCO.*

of, and interest on, all indebtedness of the Seller, and to provide for the establishment and maintenance of reasonable reserves. . . .

The term of the all-requirements contract runs through the year 2015. Power is to be provided to Southwestern, and Southwestern's obligation to pay commences upon completion of the nuclear power facility.

The deposition of Jack Compton, General Manager of Southwestern from 1952 to 1980, revealed that both he and the Southwestern board understood that the all-requirements contract served as an assurance to the REA that monies would be available to repay the loans made to Soyland.

In its prior ruling this Court stated the following:

> This court is persuaded that the long term all-requirements contract which the REA and CFC required Southwestern and Soyland to enter into served as the primary security to ensure the repayment of the massive loans which the REA and CFC made to Soyland as well as to Southwestern.

*United States v. Southwestern Elec. Coop., Inc.*, 663 F.Supp. 538 (S.D.Ill.1987). Clearly, the understanding of the General Manager is in accordance with the Court's ruling. Southwestern has attempted to raise an issue of fact by offering excerpts from the deposition of Walter Smith, President of Soyland. Mr. Smith testified that if the 1975 and 1976 estimates had shown that the costs of the plant would not be economical, Soyland would not have entered into the Clinton project. However, this again is an economic climate judgment mistake, and does not meet the requirements of mutual mistake in Illinois. Southwestern has failed to meet the first of four requirements of mutual mistake, and its claim must fail.

Nor has Southwestern shown that it meets all of the remaining requirements to establish mutual mistake. Although the second prong, reasonable care, seems to have been met, Southwestern has not satisfied the third or fourth requirements.

Southwestern has not offered any evidence to show that the enforcement of the contract would result in such grave consequences that it would be unconscionable, the third requirement.

Nor have they been able to show that Soyland could be placed in status quo if the contract were rescinded, the final requirement. Southwestern argues that Soyland can merely charge higher rates to the other fourteen members to cover debts and costs that would have been assessed to Southwestern. This clearly is not the meaning of status quo. Southwestern has not shown that Soyland could be placed in the same position it was in at the time the all-requirements contract was signed. Moreover, Southwestern has completely ignored the relationship of the REA and CFC to the contract. This Court has previously ruled that the REA and CFC are integral to the contract between Soyland and Southwestern. Therefore, any consideration of rescission should be made with regard to the status quo as to REA and CFC as well. Southwestern has failed to even address this aspect of the requested rescission, and the Court is of the opinion that none of the plaintiffs could be placed in status quo were the contract to be rescinded.

### FRUSTRATION OF PURPOSE

■ Defendant also asserts that the contract is voidable under the doctrine of frustration of purpose. *No. Illinois Gas Co. v. Energy Coop., Inc.*, 122 Ill.App.3d 940, 78 Ill.Dec. 215, 461 N.E.2d 1049 (1984), *leave to appeal denied*, discusses the standards of the doctrine of frustration of purpose in Illinois. In *No. Illinois Gas*, the Gas Co. sought declaratory judgment that it had properly ceased performance under a long-term naphtha supply contract. One of the bases plaintiff used to support its termination was that of frustration of purpose. The court stated, "[f]rustration of purpose or commercial frustration as the doctrine has been called in Illinois, is a viable defense but is not to be applied liberally." 78 Ill.Dec. at 225, 461 N.E.2d at 1059. The court recognized that the case of *Smith v. Roberts*, 54 Ill.App.3d 910, 12 Ill.Dec. 648,

370 N.E.2d 271 (1977) set out "a rigorous two-part test which requires a party to show that: (1) the frustrating event was not reasonably foreseeable; and (2) the value of counterperformance has been totally or nearly totally destroyed by the frustrating event." 78 Ill.Dec. at 225, 461 N.E.2d at 1059. In rejecting No. Illinois Gas' arguments, the court noted:

> [T]he only certainty of the market is that prices will change. Changing and shifting markets and prices from multitudinous causes is endemic to the economy in which we live. Market forecasts by supposed experts are sometimes right, often wrong, and usually mixed. *If changed prices, standing alone, constituted a frustrating event sufficient to excuse performance of a contract, then the law binding contractual parties to their agreements is no more.*

*Id.,* (emphasis added).

Initially, Southwestern has failed to show how the rise in costs of energy was unforeseeable. The history of the Clinton project shows an actual pattern of rising costs from the time of its inception. The Soyland and Southwestern board minutes alike show that the estimates were constantly being updated as well as upscaled. The mere fact that the contract provides that the rates could be reviewed and adjusted from time to time shows that the rising costs were foreseeable.

Nor has Southwestern shown that the value of counter-performance has been totally or nearly totally destroyed. As a matter of fact, Southwestern has asserted that it is current with its payments, and has not been guilty of anticipatory repudiation of the contract. Again, the mere fact that the costs are greater than anticipated is not a sufficient basis under Illinois law for rescinding the contract pursuant to the doctrine of frustration of purpose.

### CONCLUSION

This Court finds, therefore, that no genuine issue of material fact remains. Plaintiffs have shown that a valid and enforceable contract between Soyland and Southwestern exists. Defendant has failed to show that it is entitled to rescission of this contract or that the contract is voidable under either of the doctrines of mutual mistake of fact or frustration of purpose.

Accordingly, plaintiffs' Motion for Summary Judgment is GRANTED. The Court finds that as a matter of law it is proper to enter judgment in favor of the plaintiffs on Count I of the complaint for declaratory judgment. Defendant's cross-motion for partial summary judgment is DENIED and defendant's counter-claim is DISMISSED. The Clerk of the Court is ordered to enter judgment accordingly.

IT IS SO ORDERED.