(No. 58972.

*In re* APPLICATION OF AUDREY WALGENBACH, County Collector, Appellant (Palatine National Bank, Trustee, *et al.*, Appellees).

*Opinion filed October 19, 1984.—Rehearing denied November 30, 1984.*

Theodore H. Floro, State's Attorney, of Woodstock (David N. Stone, Assistant State's Attorney, of counsel), Chapman and Cutler, of Chicago (Howard H. Hush, Jr., Richard A. Makarski and Yvonne M. Homeyer, of counsel), and Brydges, Riseborough, Morris, Franke & Miller, of Chicago (Louis W. Brydges and Allyn J. Franke, of counsel), for appellant.

Abbamonto, Szura & Binder, of Cary (Richard J. Szura, of counsel), for appellees.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendants, tax objectors, appealed from the judgment of the circuit court of McHenry County denying

their objections to taxes levied for two school districts for the year 1979. The appellate court reversed (117 Ill. App. 3d 14), and we allowed plaintiff's petition for leave to appeal (87 Ill. 2d R. 315).

A stipulation contained in the record shows that on December 1, 1978, School District No. 200, McHenry County, issued $1,650,000 in bonds for working-cash-fund purposes and provided for an annual tax levy for funds to make payment of the principal and interest. It was also stipulated that on September 1, 1978, School District No. 158, McHenry and Kane counties, issued $425,000 in bonds for working-cash-fund purposes and provided for an annual tax levy for funds to pay principal and interest. At the time of the issuance of the bonds each district had a working cash fund; the balance remaining in the working cash fund of District No. 200 was $54,704, and the balance in the working cash fund of District No. 158 was $12,037. Defendants contended in the circuit court that, because the school districts had previously created working cash funds, they were without authority to issue bonds to replenish those funds, and the taxes levied to pay principal and interest on the bonds were invalid.

Section 20—1 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 20—1) authorized school districts with populations of less than 500,000 to create, maintain and administer a "working cash fund." Section 20—2, in pertinent part, provided:

> "For the purpose of creating a working cash fund, the school board of any such district may incur an indebtedness and issue bonds as evidence thereof in an amount or amounts ***." Ill. Rev. Stat. 1977, ch. 122, par. 20—2.

The School Code also provided:

> "For the purpose of providing moneys for a working cash fund, the school board of any such school district may also levy annually upon all the taxable property of

their district a tax, known as the 'working cash fund tax,' not to exceed ***." Ill. Rev. Stat. 1977, ch. 122 par. 20—3.

"Any school district may abolish its working cash fund, upon the adoption of a resolution so providing, and directing the transfer of any balance in such fund to the educational fund at the close of the then current school year." Ill. Rev. Stat. 1977, ch. 122, par. 20—8.

"Nothing in this Article prevents a school district which has abolished or abated its working cash fund from again creating a working cash fund in the manner provided in this Article." Ill. Rev. Stat. 1977, ch. 122, par. 20—9.

In reversing the judgment the appellate court held that section 20—2 authorized issuance of bonds only for the creation of a working cash fund and that the only means of obtaining additional funds for an existing working cash fund is by tax levy.

Plaintiff contends that as stated in section 20—1 the purpose of article 20 of the School Code is to enable a school district "to have in its treasury at all times sufficient money to meet demands thereon for ordinary and necessary expenditures for corporate purposes." She argues that the various provisions of article 20 must be construed together and that so construed the school districts were authorized to issue the bonds here involved. Defendants contend that the word "create" can be defined only as it was in the opinion of the appellate court. Citing the differences between the provisions of section 34—31 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 34—31), which concerns school districts with populations in excess of 500,000 and section 20—2, they argue that the General Assembly clearly intended that section 20—2 authorize the issuance of bonds for the sole purpose of creating a working cash fund.

The parties are in agreement that the purpose of statutory interpretation is to ascertain and give effect to

the legislative intent as expressed in the statute and that a statute will not be construed so as to lead to absurd, inconvenient or unjust consequences.

An examination of article 20 of the School Code shows that the purpose of the working cash fund is to provide a reserve upon which school districts may draw in anticipation of tax collections. Moneys in the working cash fund may be transferred to the operating funds of the district in anticipation of the collection of taxes levied for those funds, and when the anticipated taxes are collected, the working cash fund is reimbursed. Section 20—5 (Ill. Rev. Stat. 1977, ch. 122, par. 20—5) places limitations on the use of the moneys to the credit of a working cash fund, and section 20—6 (Ill. Rev. Stat. 1977, ch. 122, par. 20—6) provides for criminal sanctions against any member of a school board who wilfully violates the provisions of article 20.

The provisions of section 20—8 (Ill. Rev. Stat. 1977, ch. 122, par. 20—8) clearly authorize the abolishment of a working cash fund. The result of abolishment, however, is to permanently transfer funds to the educational fund, thereby supplementing the educational fund without, as required by the provisions of section 20—4 (Ill. Rev. Stat. 1977, ch. 122, par. 20—4), any obligation to reimburse the working cash fund. Although not specifically provided in the statute, implicit in the provisions of section 20—9 (Ill. Rev. Stat. 1977, ch. 122, par. 20—9) is the authority to abate a working cash fund. Section 20—9 also provides that a school district which has abolished or abated its working cash fund is not prevented from again creating a working cash fund in the manner provided in article 20.

"The law is clear that, if the main intent and purpose of the legislature can be determined from a statute, words may be modified, altered or even supplied so as to obviate any repugnancy or inconsistency with the legisla-

tive intention." (*Community Consolidated School District No. 210 v. Mini* (1973), 55 Ill. 2d 382, 386.) The intent of the statute is to provide funds which may be available for transfer to the operating funds of the district, such as its educational, operations, building or maintenance funds, and repaid to the working cash fund upon collection of the anticipated taxes. To require that in order to have authority to issue bonds a school district must abolish its working cash fund, thus effecting a transfer of funds into its educational fund, is repugnant to the explicit statutory requirement that funds transferred from the working cash fund be repaid.

We have considered the fact that section 34—31 of the School Code explicitly authorizes the issuance of bonds to increase working cash funds and the conclusion reached by the appellate court that the statutes cited "evince a conscious effort by the legislature to devise different plans by which working cash funds may be created and funded depending on the particular circumstances and needs of the entity." (117 Ill. App. 3d 14, 19.) We note, however, that in the approximately 50 years since the enactment of section 20—2 the authority to issue bonds to increase funds in an existing working cash fund had not been questioned, and upon its being questioned, the General Assembly enacted Public Act 83—966, which was approved and became effective on December 2, 1983, approximately four months after filing of the opinion of the appellate court. Public Act 83—966 provides that:

"All bonds which were:

(a) issued prior to the effective date of this amendatory Act of 1983;

(b) issued pursuant to Article 20 of The School Code, as amended;

(c) issued for the purpose of increasing an existing working cash fund; and

(d) issued in accordance with the procedures set forth in said Article 20 of The School Code, as supplemented and amended by other applicable Laws of this State; are hereby declared to be valid and legally binding obligations of the respective school districts issuing such bonds, payable in accordance with the terms thereof."

In determining the intent of the General Assembly in the enactment of the prior legislation, we may appropriately consider the legislative action taken subsequent to the filing of the opinion of the appellate court. (*Carey v. Elrod* (1971), 49 Ill. 2d 464, 472; *People v. Hudson* (1970), 46 Ill. 2d 177, 182.) We conclude that it was the legislative intent that section 20—2 of the School Code authorize the issuance of bonds to obtain funds for an existing working cash fund.

In view of our holding that section 20—2 of the School Code authorized the issuance of the bonds to increase the funds in the working cash funds, we need not, and do not, consider the contentions of the parties with respect to whether Public Act 83—966 served to validate the actions of the school districts.

For the reasons stated, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*