*In re* APPLICATION OF AUDREY WALGENBACH, McHenry County Collector (School District No. 26, McHenry County, *et al.*, Petitioners-Appellees, v. Palatine National Bank, Trust No. 953, *et al.*, Respondents-Appellants).

Second District   Nos. 2—87—0503, 2—87—0504 cons.

Opinion filed February 19, 1988.

Richard J. Szura, of Abbamonto, Szura & Binder, of Cary, for appellants.

Thomas F. Baker, State's Attorney, of Woodstock, and Allyn J. Franke, of Brydges, Riseborough, Morris, Franke & Miller, of Chicago (David N. Stone, Assistant State's Attorney, of counsel), for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

The respondent tax objectors appeal from a judgment of the circuit court of McHenry County denying their objections to taxes levied for the years 1982 and 1983 by School District No. 26.

The parties stipulated to the facts. On July 13, 1981, the Board of Education of School District No. 26 in McHenry County (the District) adopted a resolution abolishing its working cash fund and directing that the balance remaining in the fund, $99,559, be transferred to the educational fund at the end of the current school year. In the same resolution, it created a new working cash fund and authorized the issuance of working cash fund bonds of $625,000. Additional taxes were levied against the District's taxpayers as a result of the bond issue. The respondents objected to the additional taxes levied against them for the years 1982 and 1983.

The School Code authorizes school districts with a population of less than 500,000 to create a working cash fund to meet the district's ordinary and necessary corporate expenditures. (Ill. Rev. Stat. 1981, ch. 122, par. 20—1.) In order to create the fund, the School Code authorizes the district to incur indebtedness in the form of bond issues, but limits the aggregate amount of those bonds to a fixed percentage of the district's maximum permissible tax for educational purposes. (Ill. Rev. Stat. 1981, ch. 122, par. 20—2.) The district may transfer money temporarily from its working cash fund to its educational, transportation or operations, building and maintenance funds to be

used for ordinary and necessary expenditures, but the money so transferred must be repaid to the working cash fund when taxes levied to meet those expenditures are collected. (Ill. Rev. Stat. 1981, ch. 122, par. 20—4.) The School Code provides that "[a]ny school district may abolish its working cash fund, upon the adoption of a resolution so providing, and directing the transfer of any balance in such fund to the educational fund at the close of the then current school year." (Ill. Rev. Stat. 1981, ch. 122, par. 20—8.) Finally, the Code provides that "[n]othing in this Article prevents a school district which has abolished or abated its working cash fund from again creating a working cash fund in the manner provided in this Article." Ill. Rev. Stat. 1981, ch. 122, par. 20—9.

The objectors argued initially that the District had issued bonds as if it were creating a working cash fund when in fact it already had a working cash fund (which the objectors argued could not be effectively abolished and re-created in the same resolution). That argument was rejected by the Illinois Supreme Court in *In re Application of Walgenbach* (1984), 104 Ill. 2d 121. In that case, these same tax objectors challenged the actions of two school districts that had issued bonds to increase the balances of their existing working cash funds. The objectors argued that the School Code authorized the issuance of working cash fund bonds only to create a new working cash fund. This court sustained the objections, holding that if the money contained in an existing working cash fund was insufficient to meet a school district's expenses, the district could not issue bonds to increase the amount, but could "abolish the fund [citation] and then create a new one." (*In re Application of Walgenbach* (1983), 117 Ill. App. 3d 14, 18.) The supreme court reversed, concluding that the legislature intended to authorize school districts to issue bonds both to create a working cash fund and "to obtain funds for an existing working cash fund." (*In re Application of Walgenbach*, 104 Ill. 2d at 127.) The court stated that "[t]o require that in order to have authority to issue bonds a school district must abolish its working cash fund, thus effecting a transfer of funds into its educational fund, is repugnant to the explicit statutory requirement that funds transferred from the working cash fund be repaid." 104 Ill. 2d at 126.

The objectors now appear to have reversed their position to contend that, while a school district with an insufficient working cash fund may increase the fund by issuing bonds, it may not abolish and re-create the fund to achieve the same result. They contend that if the procedure utilized by the District is upheld, a school district may annually, or regularly, abolish and re-create its working cash fund to

supplement its educational fund (by transferring to it the funds remaining in its current fund before abolishing and re-creating it), effectively levying taxes in excess of the limits imposed by statute. (See *Bell v. School District No. 84* (1950), 407 Ill. 406, 414.) The District claims that it abolished and immediately re-created the fund only because the position taken by the objectors in the earlier case caused it to believe that it could not issue bonds to increase the balance of an existing working cash fund. The District claims that the procedure it used cannot have prejudiced the objectors because it did not result in the District's issuance of bonds in excess of the amount statutorily allowed. We agree.

■■ At the time the District issued the bonds in question, section 20—2 of the School Code authorized school districts to issue working cash fund bonds in amounts

> "not exceeding in the aggregate 75% of the taxes permitted to be levied for educational purposes for the then current year to be determined by multiplying the maximum educational tax rate applicable to such school district by the last assessed valuation as determined at the time of the issue of said bonds." (Ill. Rev. Stat. 1981, ch. 122, par. 20—2.)

The parties stipulated that the 1980 equalized assessed valuation for the District (the last assessed valuation at the time of the July 1981 bond issue) was $89,159,435 and that the maximum educational tax rate in effect in July 1981 was 1.46%. Using the formula set out in section 20—2, the District was authorized to issue bonds in amounts totaling $976,296 ($89,159,435 x 1.46% x 75%). Even if the District had not abolished its existing working cash fund and had been required to deduct the $99,559 remaining in it from the authorized amount, the District would have been authorized to issue working cash fund bonds totaling $876,737. The bonds issued in July 1981 totaled only $625,000. It is apparent that the procedure followed by the District did not permit it to circumvent the statutory tax limits or to levy an illegal tax against the objectors.

■■ The objectors have not shown that the District used the School Code's working cash fund provisions (Ill. Rev. Stat. 1981, ch. 122, par. 20—1 *et seq.*) to circumvent the tax limits imposed by the legislature, and we will not determine the legality of any potential future use of those sections as an abstract issue of law. (See, *e.g.*, *Gouker v. Winnebago County Board of Supervisors* (1967), 37 Ill. 2d 473, 478; see also *Bell v. School District No. 84* (1950), 407 Ill. 406, 414 (holding that "one may not complain of the invalidity of a statutory provision which does not affect him").) The objectors' contention

that the statute is capable of future misuse is insufficient to call its validity into question. (See *Bell v. School District No. 84*, 407 Ill. 406, 414; *cf. Rackow v. Human Rights Comm'n* (1987), 152 Ill. App. 3d 1046, 1057 (holding that the mere possibility of an unconstitutional application of a statute is insufficient to invalidate it).) For the reasons stated, the judgment of the circuit court of McHenry County is affirmed.

*Affirmed.*

HOPF and DUNN, JJ., concur.