*In re* APPLICATION FOR JUDGMENT FOR DELINQUENT TAXES FOR THE YEAR 1981 (The People of the State of Illinois *ex rel.* Bernard Oaks, County Treasurer and *ex officio* Collector of Taxes of Fulton County, Plaintiff-Appellee, v. Central Illinois Light Company, Defendant-Appellant (Canton Union School District No. 66, Intervenor-Appellee)).

Third District   No. 3—88—0658

Opinion filed October 27, 1989.—Rehearing denied December 11, 1989.

Louis E. Miller, of Bagley, Atherton, Clark & Miller, of Pekin (Thomas M. Atherton, of counsel), for appellant.

John Izzo, of Scariano, Kula, Ellch & Himes, Chartered, of Chicago Heights (Robert H. Ellch, of counsel), for appellee Canton Union School District No. 66.

JUSTICE STOUDER delivered the opinion of the court:

Central Illinois Light Company (CILCO) appeals from the judgment of the circuit court of Fulton County, denying its objections to taxes levied for the years 1981 through 1985 by the school board of Canton Union School District No. 66 (the district). The first of CILCO's objections contends that the district, in abolishing and re-creating its working cash fund, exceeded tax rate limitations of the School Code (the Code) (Ill. Rev. Stat. 1981, ch. 122, par. 1—1 *et seq.*). The second of its objections contends that the district exceeded taxing limitations by its adoption of a supplemental debt-service levy. We will address CILCO's objections serially.

On April 10, 1981, the district's school board adopted a resolution abolishing the district's working cash fund effective at the close of the school year and transferring any money remaining in that fund to the education fund. Then, at the same meeting, the board adopted a resolution creating a new working cash fund to be funded by the issuance of new working cash fund bonds in the amount of $1,890,000. The board further resolved that the principal and interest for such bonds be paid through the appropriate tax levy. In accordance with the resolutions, working cash fund bonds were issued on

September 1, 1981, and additional working cash fund bond taxes were levied against the district's taxpayers, including CILCO.

In November of 1982, the board again passed a resolution abolishing the working cash fund. While this action was not accompanied by a simultaneous bond issue and re-creation of the fund, the fund was eventually re-created with the first tax levy following the abolishment of the fund.

For the years 1981 to 1985, CILCO paid its taxes under protest. When the collector applied for a judgment each year, CILCO objected to both the working cash fund bond taxes and to the working cash fund taxes. The district was permitted each year to intervene in the proceedings, wherein the parties filed cross-motions for summary judgment. After the circuit court granted the district's motion and denied CILCO's motion for summary judgment, CILCO brought this appeal, arguing that the district used the procedure of abolishing and re-creating the working cash fund as an illegal means to supplement its education fund, and that the circuit court should, therefore, have entered judgment in its favor. We affirm as to this objection.

■ It is true that section 17—2 of the Code specifies a maximum rate at which a school district may levy a tax for educational purposes. (Ill. Rev. Stat. 1981, ch. 122, par. 17—2.) We note, however, that the section does not specify a maximum amount that an educational fund may contain. We note, moreover, that because a district's educational fund is the statutorily designated recipient of the balance of a district's working cash fund upon its abolishment (Ill. Rev. Stat. 1981, ch. 122, par. 20—8), it is inevitable that upon a district's abolishment of its working cash fund its educational fund may contain more than the amount that it received through the section 17—2 levy. Thus, it is not surprising that in this case the district aggrandized its educational fund when it abolished the working cash fund. The district acted within the statutory framework. Its action cannot, therefore, be considered illegal.

We also disagree with CILCO's suggestion that the district exceeded working cash fund limitations. Article 20 of the School Code (Ill. Rev. Stat. 1981, ch. 122, par. 1—1 *et seq.*) authorizes school boards of districts having a population of less than 500,000 to create, abolish and re-create a working cash fund. (Ill. Rev. Stat. 1981, ch. 122, par. 20—1 *et seq.*; *In re Application of Walgenbach* (1988), 166 Ill. App. 3d 629, 631, 520 N.E.2d 78, 79.) The working cash fund is created and maintained in part by incurring a debt through bond issues. (Ill. Rev. Stat. 1981, ch. 122, par. 20—2; *In re Application of Walgenbach* (1984), 104 Ill. 2d 121, 123-24, 470 N.E.2d 1015, 1017.)

There is a limit, however, to the amount of indebtedness that a district may incur. Section 20—2 of the Code provides that a

> "district may incur an indebtedness and issue bonds as evidence thereof in an amount or amounts not exceeding \*\*\* 75% of the taxes permitted to be levied for educational purposes for the then current year \*\*\* plus 75% of the last known entitlement of such district to taxes \*\*\* lost \*\*\* as a result of the abolition of ad valorem personal property taxes." (Ill. Rev. Stat. 1981, ch. 122, par. 20—2.)

This indebtedness limitation includes any unpaid balance on previous bond issues such that the abolishment of the working cash fund does not extinguish a working cash fund obligation. Ill. Rev. Stat. 1981, ch. 122, par. 20—2.

■ In this case, at the time of the September 1, 1981, working cash fund bond issue of $1,890,000, the district had a working cash fund bond indebtedness of only $335,000 outstanding from a 1978 issue. Thus, the aggregate working cash fund bond indebtedness of the district after the September 1, 1981, issue was $2,225,000. The maximum indebtedness that the district could have incurred under section 20—2, however, is $2,442,727.02 ($1,371,253, which is 75% of the taxes permitted to be levied for educational purposes ($114,271,083 (the last—1981—assessed value of the taxable property of the district) x 1.60% (the maximum applicable tax rate pursuant to section 17—2(3) of the Code (Ill. Rev. Stat. 1981, ch. 122, par. 17—2(3)))) plus $1,071,474.02, which is 75% of the district's 1981 entitlement to personal property replacement taxes ($1,428,632.03).) Thus, the district did not exceed the section 20—2 debt limitation by its September 1, 1981, working cash fund bond issue.

The working cash fund is also maintained through working cash fund tax levies (Ill. Rev. Stat. 1981, ch. 122, par. 20—3; Schwartz, *Illinois School Finance—A Primer*, 56 Chi.-Kent L. Rev. 831, 856 (1980)). Section 20—3 of the School Code limits the annual levy for working cash funds to a maximum of .05% of the assessed value of property within the school district and provides that no tax shall be levied if the district is at its maximum debt limit or if the levy would generate funds sufficient to exceed the limit provided in section 20—2. (Ill. Rev. Stat. 1981, ch. 122, par. 20—3.) Because we have already concluded that the district had not reached its maximum indebtedness limit, we need only decide if the working cash fund levy would generate funds, which, added to existing funds, would exceed the limitation of section 20—2.

■ As we noted above, the last applicable assessed valuation for

property in the district is $114,271,083. This amount multiplied by the working cash fund tax rate of .05% equals $57,135.54. This amount added to the total amount of the working cash fund of $2,225,000 ($335,000 (the amount remaining from the 1978 bond issue) plus $1,890,000 (the amount of the 1981 bond issue)) equals $2,282,135.54. Because this amount is less than the section 20—2 limitation amount of $2,442,727.02, the district did not exceed the section 20—3 tax rate limitation in levying a working cash fund tax.

In sum, the district, in abolishing and re-creating the working cash fund, acted within the statutory framework in financing its educational and working cash funds. The circuit court was correct, therefore, in rejecting the first of CILCO's objections.

We next address CILCO's objection to the district's adoption of a supplemental debt-service levy. In *Central Illinois Light Co. v. Johnson* (1981), 84 Ill. 2d 275, 418 N.E.2d 696, the supreme court of Illinois held that certain property of CILCO which had been taxed as real property should have been classified as personal property and, therefore, not taxable. The result of that decision was to significantly decrease the assessed valuation of the property of CILCO located within the district after the county clerk had already calculated the necessary debt-service extensions for tax years 1979, 1980 and 1981. The circuit court of Fulton County, implementing the supreme court's decision, on August 25, 1981, ordered refunds to CILCO out of revenues that would have been distributed to the taxing bodies of Fulton County, including the school district.

In an effort to obtain funds sufficient to accommodate both the needs of the district and the order of the circuit court, the school board, on March 15, 1982, unanimously adopted a resolution authorizing a supplemental debt-service levy. The resolution recited the deficiency in the bond and interest tax levy owing to the *Central Illinois Light Co. v. Johnson* decision and calculated the supplemental levy necessary to correct that deficiency—$130,092. A certified copy of the resolution was filed with the county clerk on March 23, 1982. The clerk extended the levy with the 1981 taxes. CILCO paid the taxes under protest and objected to the collector's application for judgment, contending that there is no statutory authority for the issuance of a supplemental debt-service tax, and that, if there were such authority, the levy was not timely made. We reverse as to this objection.

Section 19—7 of the Code provides that taxes to pay principal and interest on bonds are to be computed, extended and collected "in the same manner as is *** provided for the computation, exten-

sion and collection of taxes for general corporate purposes for the issuing district." (Ill. Rev. Stat. 1981, ch. 122, par. 19—7.) The process of initiating the collection of taxes for general corporate purposes is provided for in section 17—11 of the Code, which requires the filing of a certificate of tax levy with the county clerk "on or before the last Tuesday in December, annually." (Ill. Rev. Stat. 1981, ch. 122, par. 17—11.) The supreme court of Illinois has held that an additional or amended levy, the certificate for which is filed after the section 17—11 deadline, will be effective only where "its purpose is to correct errors in an earlier certificate which did not accurately reflect the action of the" board. (*Board of Education of Community Unit School District No. 16 v. Barrett* (1977), 67 Ill. 2d 11, 13, 364 N.E.2d 89, 91.) Failing to meet the deadline renders the levy void. *People ex rel. Joseph v. Pennsylvania R.R. Co.* (1959), 18 Ill. 2d 61, 63, 162 N.E.2d 350, 351.

■ In this case the district failed to meet the section 17—11 deadline for filing the certificate. The purpose of the additional levy was not to correct errors in an earlier certificate which failed to accurately reflect the action of the board. Thus, the supplemental debt-service levy was of no effect. The circuit court erred, therefore, in denying CILCO's objection to the supplemental debt-service levy.

For these reasons, the part of the judgment of the circuit court of Fulton County denying CILCO's objection to the working cash fund bond levy and working cash fund tax levy is affirmed, and the part of its judgment denying CILCO's objection to the supplemental debt-service levy is reversed.

Affirmed in part; reversed in part.

BARRY and HEIPLE, JJ., concur.