No. 2--07--0934      Filed:  2-6-09

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| G.I.S. VENTURE <u>et al.</u>, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | Nos.  00--T--2 |
| | ) | 00--TX--10002 |
| | ) | |
| JOHN LOTUS NOVAK, County Treasurer, | ) | |
| and <u>ex officio</u> County Collector of Du Page | ) | |
| County, Illinois, | ) | |
| | ) | |
| Defendant-Appellee, | ) | |
| | ) | Honorable |
| (West Chicago School District No. 33, | ) | Edward R. Duncan, Jr., |
| Intervenor-Appellee). | ) | Judge, Presiding. |

_____

JUSTICE McLAREN delivered the opinion of the court:

Plaintiffs, G.I.S. Venture <u>et al.</u> (the taxpayers), appeal from the trial court's orders granting summary judgment in favor of intervenor, West Chicago School District No. 33 (District), denying the taxpayers' cross-motion for summary judgment, and denying the taxpayers' motion for rehearing. We affirm in part, reverse in part, and remand.

FACTUAL BACKGROUND

On May 21, 1998, the District adopted a resolution declaring its intention to issue bonds in the amount of $4 million to fund its working cash fund.  After giving notice and holding a public

hearing, the District adopted a resolution to provide for the issuance of the working cash fund bonds, which resolution provided in part:

"The proceeds of the Bonds are appropriated for working cash fund purposes and shall be set aside in a separate fund known and designated as the 'Working Cash Fund of School District No. 33, DuPage County, Illinois,' which said fund shall be held apart, maintained and administered as provided in Article 20 of the [School Code] at least until all the Bonds have been retired, and shall not be used for any other purpose whatsoever, it being the present intention and reasonable expectation of the Board that a portion of said proceeds of the Bonds will be used to build and equip additions to and alter, repair, improve and equip the existing school buildings of the District after the transfer of funds to the appropriate operating fund of the district in accordance with the applicable provisions of the School Code (the 'Project')."

Working cash fund bonds totaling $3,854,656 were then sold. During the 1998-99 fiscal year, the District transferred the net proceeds of the bond issue, $3,829,357, from the working cash fund to its operations and maintenance (O&M) fund. It is unclear from the record whether the working cash fund held any other assets at the time that the bonds were sold or the transfer was made.

The District adopted a 1999 tax levy for educational purposes in the amount of $11,214,694. This levy was extended at the maximum statutory rate of 2.2600 per $100 of equalized value. The District also extended maximum levies for O&M (0.2500, for $1,240,563) and working cash (0.0500, for $248,112).

PROCEDURAL BACKGROUND

The taxpayers filed objection A to a portion of the 1999 levy for the educational fund, arguing that the $3,829,357 that had been transferred from the working cash fund to the O&M fund should properly have been transferred to the educational fund. Therefore, according to the taxpayers, the 1999 levy for educational purposes resulted in an illegal and void tax rate and produced "excessive taxes" in the amount improperly transferred.

The District was granted leave to intervene and filed a motion for summary judgment. The taxpayers filed a cross-motion for summary judgment. On July 31, 2007, the trial court granted summary judgment in favor of the District and denied the taxpayers' motion. The court subsequently denied the taxpayers' motion for rehearing and found no just reason to delay appeal, pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)). This appeal followed.

We have ordered taken with the case the joint motion of defendant, John Lotus Novak, and the District to strike nonrecord materials contained in the appendix to the taxpayers' brief and any portions of the brief that refer to such materials, along with certain arguments that the taxpayers have raised for the first time in their reply brief. We have also taken with the case the taxpayers' motions for leave to file a response and to cite additional authority.

We grant the taxpayers' motions for leave to file and to cite additional authority, and we grant in part and deny in part the motion to strike portions of the taxpayers' brief. Novak and the District first seek to strike from the taxpayers' brief 16 pages of material contained in the appendix: two sections of the Illinois Administrative Code and a one-page printout of an Internet thesaurus website containing synonyms and antonyms for the word "abolish." We first note that courts are required to take judicial notice of all rules published in the Illinois Administrative Code and the Illinois Register. See 5 ILCS 100/5--80(g) (West 2006). This court may take judicial notice of rules and regulations

even when they are not part of the record on appeal. Acme Brick & Supply Co. v. Department of Revenue, 133 Ill. App. 3d 757, 762 (1985). Thus, while Supreme Court Rule 342(a) (210 Ill. 2d R. 342(a)) does not provide for the inclusion in the appendix of such nonrecord material as rules and regulations, we do not find that the inclusion of the Illinois Administrative Code sections is improper, and we deny the motion to strike as it relates to this material. However, the inclusion of the printout of the Internet thesaurus has no legal basis, and it and all references to it are stricken.

The motion also seeks to strike section III.C of the taxpayers' reply brief as forfeited because the taxpayers did not raise that argument in their initial brief. Issues raised for the first time in an appellant's reply brief are considered forfeited unless they are responsive to an argument raised in the appellee's brief. Bowler v. City of Chicago, 376 Ill. App. 3d 208, 218 (2007). Our review of the briefs shows that the District raised in its own response brief the issue contained in the complained-of section of the reply brief. Therefore, we deny that portion of the motion to strike.

## ANALYSIS

The taxpayers first contend that the trial court erred in granting summary judgment to the District and denying summary judgment to the taxpayers. Summary judgment is proper when the pleadings, depositions, admissions, and affidavits on file, viewed in the light most favorable to the nonmoving party, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Allegis Realty Investors v. Novak, 223 Ill. 2d 318, 330 (2006). The applicability and interpretation of legislation present questions of law that are suitable for resolution through summary judgment. Allegis, 223 Ill. 2d at 330. We apply de novo review both to the meaning and effect of statutory provisions and to the trial court's grant or denial of summary judgment. Allegis, 223 Ill. 2d at 330.

Section 20--1 of the School Code (the Code) authorizes a school district to create a working cash fund "for the purpose of enabling the district to have in its treasury at all time [sic] sufficient money to meet demands thereon for ordinary and necessary expenditures for corporate purposes." 105 ILCS 5/20--1 (West 1998). A district may issue bonds and indebtedness "[f]or the purpose of creating a working cash fund." 105 ILCS 5/20--2 (West 1998). Bonds may be issued to obtain funds for an existing working cash fund. In re Application of Walgenbach, 104 Ill. 2d 121, 127 (1984). Money for a working cash fund may also be provided by a tax levy. 105 ILCS 5/20--2 (West 1998). Money from the working cash fund "shall not be used by the school board in any manner other than to provide moneys with which to meet ordinary and necessary disbursements for salaries and other school purposes and may be transferred in whole or in part to the general funds or both [sic] of the school district and disbursed therefrom in anticipation of the collection of taxes lawfully levied." 105 ILCS 5/20--4 (West 1998). Upon the district's receipt of taxes, the working cash fund shall immediately be reimbursed. 105 ILCS 5/20--4 (West 1998). Money is to be transferred from the working cash fund to another fund pursuant to a resolution passed by the school board. 105 ILCS 5/20--5 (West 1998). A working cash fund may be abolished by resolution; any balance in the fund is to be transferred to the educational fund at the end of the then current school year. 105 ILCS 5/20--8 (West 1998). Such a transfer is permanent, and there is no obligation to reimburse the working cash fund. See Walgenbach, 104 Ill. 2d at 125. A district that has "abolished or abated" its working cash fund may again create such a fund. 105 ILCS 5/20--9 (West 1998). While the abatement of a working cash fund is not specifically provided for or defined in the Code, our supreme court has found that the authority to abate a working cash fund is "implicit" in section 20--9. Walgenbach, 104 Ill. 2d at 125. Any member of a school board who wilfully violates article 20 of

the Code, dealing with working cash funds, is guilty of a business offense and is to be fined and must forfeit his position. 105 ILCS 5/20--6 (West 1998).

The question before us then is whether a school district that permanently transfers money from its working cash fund through "abatement" is required to transfer the money only to the educational fund. This is a question of statutory construction, which is a question of law and is well suited to summary judgment. See Allegis, 223 Ill. 2d at 330. The primary objective in construing a statute is to ascertain and give effect to the intent of the legislature, and the best indication of that intent is the plain and ordinary meaning of the statute's language. Wisniewski v. Kownacki, 221 Ill. 2d 453, 460 (2006). Where the statute's language is clear and unambiguous, we must apply it without resort to other rules of statutory construction. Wisniewski, 221 Ill. 2d at 460. In construing a statute, we will presume that the legislature did not intend absurdity, injustice, or inconvenience. Alvarez v. Pappas, 229 Ill. 2d 217, 228 (2008).

The legislature did not provide a definition of "abated" in article 20 of the Code. However, as the legislature distinguished the term "abated" from the term "abolished" in section 20--9 of the Code (105 ILCS 5/20--9 (West 1998)), we must conclude that it has some meaning other than "abolished," especially since the legislature specifically provided for abolishment in section 20--8 and gave specific instructions as to how a working cash fund was to be abolished. See 105 ILCS 5/20--8 (West 1998). Under section 20-8, the abolishment of the working cash fund requires a transfer of any balance in the fund to the educational fund; any outstanding loans from the working cash fund to any other fund become payable to the educational fund at the end of the current school year, and all outstanding taxes levied to provide money for the working cash fund are to be collected and paid into the educational fund. 105 ILCS 5/20--8 (West 1998). There is no provision for repayment to

the working cash fund after it is abolished. The result of the abolishment is a permanent transfer of all of the money to the educational fund, with no obligation to reimburse the working cash fund. Walgenbach, 104 Ill. 2d at 125. Thus, since the legislature has seen fit to distinguish abatement from abolishment, abatement must mean something other than a permanent transfer of all of the money, with no reimbursement to the working cash fund. Only abolishment allows for such a permanent transfer.

The District posits that an abatement is a permanent transfer of funds that reduces but does not "zero out" the balance of the transferring fund. The District then argues that section 20--5 of the Code "explicitly" provides for a permanent transfer of working cash fund assets, "which is separate and apart from the type of permanent transfer authorized when the fund is abolished." Section 20--5 allows for money earned as interest from the investment of the working cash fund to be transferred to "another fund of the district without any requirement of repayment" to the working cash fund. 105 ILCS 5/20--5 (West 1998). According to the District, such transfers "do not differ from abatements in practical effect" in that they "do not 'zero out' the balance of the working cash fund by permanently moving working cash fund assets to one or more operating funds." Such argument is sophistry. Even if we accept the District's definition of abatement, section 20--5 is inapplicable in this case. The legislature explicitly allowed for permanent transfers of earned interest to other funds. However, the District did not transfer interest in this case. It transferred more than $3,800,000 in bond proceeds that had been in the working cash fund for less than one school year. Section 20--5 provides no basis for a general permanent transfer of working cash fund assets to funds other than the educational fund, whether through abatement or otherwise.

The District also argues that a 2002 amendment to the Code confirms that it properly abated working cash fund assets to the O&M fund. Public Act 92--127, effective January 1, 2002, amended section 17--2A of the Code by adding, inter alia, the following language:

"Any other permanent interfund transfers authorized by any provision or judicial interpretation of this Code for which the transferee fund is not precisely and specifically set forth in the provision of this Code authorizing such transfer shall be made to the fund of the school district most in need of the funds being transferred, as determined by resolution of the school board." 105 ILCS 5/17--2A (West 2002).

Even if this amendment were to be given retroactive application (which we explicitly do not determine here), it would not apply to the facts at issue before us. As we have stated, the only permanent interfund transfers explicitly authorized by the Code are transfers of earned interest from the investment of the working cash fund (105 ILCS 5/20--5 (West 1998)) and the transfer of the working cash fund assets to the educational fund upon the abolishment of the working cash fund (105 ILCS 5/20--8 (West 1998)). The District argues that, in Walgenbach, our supreme court authorized permanent transfers of working cash fund assets by its interpretation of section 20--9 of the Code. However, the Walgenbach court did not interpret section 20--9 to authorize permanent transfers of working cash fund assets, via abatement, to funds other than the educational fund. While the court found, in dicta, an implicit authority to abate a working cash fund (see Walgenbach, 104 Ill. 2d at 125), the holding of the case was that section 20--2 of the Code authorized the issuance of bonds to obtain money for an existing working cash fund. See Walgenbach, 104 Ill. 2d at 127. The court spent one sentence of its opinion on the implicit authority to abate; it did not define what it meant to abate the fund or explain how it would be accomplished, let alone interpret section 20--9 to authorize

abatement as a method of allowing a permanent transfer of working cash fund assets to funds other than the educational fund. We find the amendment of section 17--2A of the Code to have no application here.

The District seeks to use its working cash fund as a source of assets that can rise, phoenix-like, each time that it is depleted by a permanent transfer to any account that the District desires. However, neither the legislature nor the courts of this state have allowed such unfettered discretion in the permanent transfer of assets from the working cash fund. The District could not properly permanently transfer the money from the working cash fund to the O&M fund; repayment was required. Thereafter, with either an abolishment or an abatement, the amount of the abolishment or the abatement should have been permanently transferred from the working cash fund to the educational fund. The trial court's grant of summary judgment in favor of the District was in error and must be reversed.

The taxpayers also contend that the trial court erred in denying their motion for summary judgment. According to the taxpayers, since the assets should have been transferred to the educational fund instead of the O&M fund, the trial court should have granted summary judgment in their favor. The taxpayers argue that, where there has been a "diversion of funds, taxpayers may object and deduct the amount of the funds diverted from a subsequent tax levy made for the same fund." Thus, according to the taxpayers, the $3,829,357 improperly transferred to the O&M fund instead of the educational fund should be deducted from the 1999 educational fund levy of $11,214,694. The taxpayers devote almost no argument to this contention, citing only one case. In People ex rel. Meyers v. Chicago & North Western Ry. Co., 1 Ill. 2d 255 (1953), the school boards declared by resolution that their building fund resources were in excess of building needs and transferred

money from their building funds to their educational funds. Such transfers were authorized by statute. Immediately thereafter, the districts levied taxes for building fund expenditures for the next year. Meyers, 1 Ill. 2d at 261. Taxpayers objected, arguing that, if assets were needed for building purposes, the transfers were unlawful and the levies were actually made to replace money unlawfully diverted from the building funds. Meyers, 1 Ill. 2d at 262. Our supreme court concluded that the resolutions declaring that the assets in the building funds were in excess of building needs, and the almost-immediate declarations, through tax levies, that building fund amounts were needed, could not both be true; if no transfers had been made, the building fund needs and the subsequent levies could have been reduced by the amounts of the transfers. Meyers, 1 Ill. 2d at 263. This pattern of conduct, "even though practiced in good faith, operates only as a device to augment the educational funds by diverting from the building funds, and *** is [a] practice which is not contemplated by any statute and has been condemned by this court." Meyers, 1 Ill. 2d at 263. Therefore, the court ruled that the trial court erred in overruling the objections "made to so much of the rate extended in each district as was necessary to replace the amounts transferred to the educational funds." Meyers, 1 Ill. 2d at 263.

Similarly, the District's practice here is not contemplated by statute and is condemned by this court. The District's actions are clearly an attempt to circumvent limits on the amounts to be levied for O&M. The money had barely been deposited in the working cash fund before the District attempted to permanently transfer it to the O&M fund. It is also clear that, if the money was no longer needed in working cash, the educational fund certainly could have used it; the 1999 educational fund levy was extended at the maximum rate. However, genuine issues of material fact remain such that summary judgment in favor of the taxpayers is not appropriate. Genuine issues of material fact remain

as to whether the working cash fund assets, if added to the educational fund, result in an excessive accumulation of assets in the educational fund. Even though the 1999 educational fund levy was extended at the maximum rate, a proper permanent transfer to that fund may result in a proper accumulation of money in that fund. In that case, the taxpayers would not be entitled to judgment. Therefore, additional hearings are required. However, since it was stipulated that the transfer from the working cash fund to the O&M fund was a permanent transfer, partial summary judgment should have been entered as to the permanent nature of the transfer and that any abatement or abolishment should have inured to the benefit of the education fund.

For these reasons, the judgment of the circuit court of Du Page County is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion to determine if the abolishment, when properly applied, would result in an improper accumulation of assets in the education fund.

Affirmed in part and reversed in part; cause remanded.

BOWMAN and BURKE, JJ., concur.