# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Gallarneau v. Calvary Chapel of Lake Villa, Inc., 2013 IL App (2d) 120218**

---

| | |
|---|---|
| Appellate Court Caption | BRITTANY GALLARNEAU, a Minor, by Her Father and Next Friend, Hugh Gallarneau, Plaintiff-Appellant, v. CALVARY CHAPEL OF LAKE VILLA, INC., Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-12-0218 |
| Filed | June 27, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the injuries suffered by the minor plaintiff while attending an end-of-the year party for a kids program at defendant church, the trial court erred in entering summary judgment for defendant on the ground that the program was a "school" under the School Code and was immune from liability for the negligence alleged, since the church was not related to any educational system, its program was called a club, not a school, and even though religious instruction was provided through the club, the voluntary instructional ministry and social setting did not fall within the scope of the School Code and its grant of immunity. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 10-L-1183; the Hon. Christopher C. Starck, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Nicholas A. Riewer, of Riewer & Collins, LLC, of Lake Forest, for appellant.

William B. Weiler and Kristen A. Cemate, both of Langhenry, Gillen, Lundquist & Johnson, LLC, of Chicago, for appellee.

Panel

JUSTICE McLAREN delivered the judgment of the court, with opinion.

Presiding Justice Burke and Justice Hutchinson concurred in the judgment and opinion.

**OPINION**

¶ 1 Plaintiff, Brittany Gallarneau, by her father and next friend, Hugh Gallarneau, appeals from the trial court's grant of summary judgment in favor of defendant, Calvary Chapel of Lake Villa, Inc. (Calvary). We reverse and remand.

¶ 2 I. BACKGROUND

¶ 3 On May 20, 2009, Brittany was attending the Calvary Kids Club (CKC), a program sponsored by Calvary that provided "teachings and activities for children" on Wednesday evenings. May 20 was the last meeting before summer, and CKC held an end-of-the-year party. The activities included a relay race, outside on church property, in which the contestants were to run backwards. While running in that race, Brittany fell backwards and broke both of her arms.

¶ 4 Brittany filed a one-count complaint, seeking damages in excess of $50,000, alleging that Calvary breached its duty "to provide and supervise the minor plaintiff in said activities in a reasonably safe and secure setting." Calvary eventually filed a motion for summary judgment, asserting that it was immune to suits alleging ordinary negligence, pursuant to section 24-24 of the School Code (Code) (105 ILCS 5/24-24 (West 2008)). After briefing and oral argument, the trial court found that CKC was a school under section 24-24 of the Code and entered summary judgment in favor of Calvary. This timely appeal followed.

¶ 5 II. ANALYSIS

¶ 6 Brittany contends that the trial court erred in granting summary judgment in favor of Calvary. Summary judgment is proper when the pleadings, admissions, depositions, and affidavits on file, viewed in the light most favorable to the nonmoving party, demonstrate

-2-

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *G.I.S. Venture v. Novak*, 388 Ill. App. 3d 184, 187 (2009). The applicability and interpretation of legislation present questions of law that are amenable to resolution through summary judgment. *Id.* We review *de novo* the meaning and effect of a statutory provision, as well as a trial court's grant or denial of summary judgment. *Id.*

¶ 7        Section 24-24 of the Code provides in relevant part:

"Subject to the limitations of all policies established or adopted under Section 14-8.05, teachers, other certified educational employees, and any other person, whether or not a certificated employee, providing a related service for or with respect to a student shall maintain discipline in the schools, including school grounds which are owned or leased by the board and used for school purposes and activities. In all matters relating to the discipline in and conduct of the schools and the school children, they stand in the relation of parents and guardians to the pupils. This relationship shall extend to all activities connected with the school program, including all athletic and extracurricular programs, and may be exercised at any time for the safety and supervision of the pupils in the absence of their parents or guardians." 105 ILCS 5/24-24 (West 2008).

In both disciplinary and nondisciplinary matters in schools, teachers and certified and noncertified personnel stand in the relation of parents and guardians to the students. *Kobylanski v. Chicago Board of Education*, 63 Ill. 2d 165, 171-72 (1976).[1] Since a parent is not liable for injuries to his child absent willful and wanton conduct, section 24-24 makes teachers and other covered personnel immune from liability for ordinary negligence. See *id.* at 173; *Courson v. Danville School District No. 118*, 301 Ill. App. 3d 752, 755 (1998). This immunity is not expressly provided by section 24-24; it arises indirectly from the *in loco parentis* relationship of teachers and other educational employees with students. *Henrich v. Libertyville High School*, 289 Ill. App. 3d 809, 815 (1997). For the immunity to apply, a teacher-student relationship must give rise to the conduct that is the proximate cause of the plaintiff's injury. *Jastram v. Lake Villa School District 41*, 192 Ill. App. 3d 599, 603 (1989). Vicarious immunity is also bestowed upon the institution if the cause of action is predicated on the ordinary negligence of an employee who has the statutory immunity. See *Knapp v. Hill*, 276 Ill. App. 3d 376, 383 (1995); *Jastram*, 192 Ill. App. 3d at 603.

¶ 8        "The term 'school' is a generic one which has numerous meanings." *Possekel v. O'Donnell*, 51 Ill. App. 3d 313, 315 (1977). After providing a national review of judicial definitions (*id.* at 315-16), the *Possekel* court found that the "common denominator" of the definitions was "that the place be one where instruction is given, generally to the young." *Id.* at 316. Illinois courts have found that an institution constitutes a school: at a daycare program affiliated with a private, parochial school system owned and operated by a church (*Hilgendorf v. First Baptist Church*, 157 Ill. App. 3d 428 (1987)); where religious instruction was given to children twice a week in rooms on the upper floors of a church building (*City*

---

[1]Noncertified personnel were not included in section 24-24 at the time that *Kobylanski* was decided but were added by legislative amendment. See Pub. Act 89-184, § 1 (eff. July 19, 1995).

*of Chicago v. Bethlehem Healing Temple Church*, 93 Ill. App. 2d 303 (1968)); and even in a private home where a child was receiving home-schooling (*People v. Levisen*, 404 Ill. 574 (1950)). Here, it is uncontested that Calvary provided religious instruction on Wednesday evenings through CKC. As such, CKC can be found to be a "school" under the generic *Possekel* definition.

¶ 9    However, a mere generic finding that an institution is a "school," based on the fact that instruction is given to the young, is not sufficient to invoke the immunity extended under section 24-24 of the Code; the "sole question *** is not whether the defendant's establishment constituted a school, but whether it comes within the scope of section 24-24." *Possekel*, 51 Ill. App. 3d at 318. For example, the school that was found to exist on the upper floors of the church in *Bethlehem Healing Temple Church* was found to exist for purposes of determining whether a city ordinance requiring the installation of an automatic sprinkler system in schools applied.[2] See *Bethlehem Healing Temple Church*, 93 Ill. App. 2d at 306. The question at issue was "the legal status of the defendant's four-story building as either a Type 1 School, and hence within the ordinance, or a church, and hence outside the terms of the ordinance." *Id.* at 308. Pursuant to the ordinance, which the parties agreed was "enacted and enforced in an effort to prevent a tragic fire such as the one at Queen of Angels Parochial School" (*id.* at 307), Type 1 schools included "day nursery schools, kindergarten schools, elementary schools, high schools and other similar occupancies." (Internal quotation marks omitted.) *Id.* at 306. The court's finding that Bethlehem Church (through its religious education classes, which served between 200 and 350 children at any one time) operated a Type 1 school pursuant to the ordinance's phrase "other similar occupancies" (*id.* at 308-09) is of limited value in determining whether CKC "comes within the scope of section 24-24" immunity.

¶ 10    *Possekel* involved a child injured while attending the defendant's "nursery and kindergarten" that, while licensed as a day care center pursuant to the Child Care Act of 1969 (Ill. Rev. Stat. 1975, ch. 23, ¶ 2212.09), was not licensed as a nursery school or kindergarten. The appellate court noted that the defendant had failed to produce evidence tending to show that it engaged in instruction and failed to allege in its motion for summary judgment that it did so; instead, the defendant merely "relied upon the fact the establishment was called a nursery school, and the plaintiff in the complaint was called a student." *Possekel*, 51 Ill. App. 3d at 317. However, even beyond this failure to establish that the institution fit within the generic common-law definition of a school, the court also held that "[t]he School Code does not concern itself with nursery schools and kindergartens unless they are run by a school system." *Id.* at 318. Merely calling an institution a school, and a child a student, does not make either one so. *Id.* at 317.

¶ 11    Brittany first argues that Calvary "is a church," is not "affiliated with a school or school

_____

[2]Interestingly, while Calvary points to *Bethlehem Healing Temple Church* to support its contention that CKC is a school, the church in that case contended that "it is operating a church and not a school on its premises." *Bethlehem Healing Temple Church*, 93 Ill. App. 2d at 306-07. The trial court and the appellate court disagreed.

system," and "does not offer any academic schooling or teaching." She characterizes CKC as "a religious program" and points out that the women who were directing CKC on the evening of her injury, Barbara Albert and Julie Kenney, "are neither actual *teachers* nor employees" of Calvary but "are church members and *volunteers* who assist in running" CKC. (Emphases in original.)

¶ 12	Calvary responds that Brittany "ignores the fact that a religious entity can operate a school and that Section 24-24 applies." Indeed, immunity under section 24-24 has long been recognized as extending to schools operated by religious organizations. See *Hilgendorf*, 157 Ill. App. 3d 428; *Cotton v. Catholic Bishop*, 39 Ill. App. 3d 1062 (1976); *Merrill v. Catholic Bishop*, 8 Ill. App. 3d 910 (1972). However, Calvary's reliance on these cases is misplaced. In these cases, the defendants operated full-time educational institutions. See *Hilgendorf*, 157 Ill. App. 3d 428 (daycare program affiliated with a private, parochial school system owned and operated by the defendant church); *Cotton*, 39 Ill. App. 3d at 1064 (did not describe the school involved other than to reference "private schools"); *Merrill*, 8 Ill. App. 3d at 910 (described as "non-profit private school" and "a parochial school").

¶ 13	Here, CKC has no relationship with such an educational system. Its own name announces that it is a club, not a school. According to the depositions of Brittany, Albert, and Kenney, CKC was held one evening per week, for an hour and a half, from September through May. Calvary also provided Sunday School during Sunday church services and Vacation Bible School for one week in July. Kids through age 10 (fifth grade) were allowed to participate in CKC, while kids age 11 and older (grades 6 through 12) met separately as the youth group; both CKC and the youth group met during Calvary's Wednesday night church service. According to Kenney, who was the director of CKC at the time in question, the "typical schedule" of a CKC Wednesday (other than the last meeting of the year) was "worship. And then we go into our different classroom games, snacks, whatever we're doing that day." The CKC kids would do "Bible study, games, crafts, just learn about Jesus." The children did "lessons" and learned about the Bible every session, even utilizing a workbook. Memorization of Bible verses and stories led to earning a CKC vest and patches to put onto the vest, "like a girl scout vest," according to Brittany. Kenney and all of the "teachers" were volunteers. As Kenney stated, "It's all pretty informal"; records were not kept, e-mails were sent from her personal computer, and there was no office.

¶ 14	We conclude that, while Calvary provides religious instruction through CKC, CKC is nevertheless not the type of establishment that comes within the scope of section 24-24; thus, Calvary is not entitled to the immunity provided by that section. CKC is a voluntary club, more akin to a scouting organization than a school. Such organizations, which are run by volunteers, also provide instruction in various subjects and organized activities for the members.[3] Section 24-24 is not applicable to such voluntary organizations, even if they do provide some element of instruction.

¶ 15	In attempting to apply the reasoning and holding of *Hilgendorf* to its own situation,

---

[3]We also note that scouting programs are often sponsored by churches.

Calvary claims that it runs "a system of religious education" consisting of Sunday School during Sunday morning church services, CKC on Wednesday nights, and Vacation Bible School in the summer, such that CKC is "part of a private, parochial school system" as was the daycare program in that case. See *Hilgendorf*, 157 Ill. App. 3d at 430. This attempt is strained and artificial. In *Hilgendorf*, the defendant church "owned and operated" the First Baptist Church School, which ran the daycare program at which a child was injured. *Id.* at 429. The teacher whose negligent supervision was alleged was an elementary school teacher who was certified by the State of Illinois. *Id.* at 430. While the court did not describe in detail the "private, parochial school system" that it found the church to be operating (*id.*), it is clear that the church operated a distinct entity known as First Baptist Church School that employed at least one certified teacher. Here, there is no evidence that CKC was part of an organized "school system" rather than one of the various youth ministries and clubs that are part of the life of a congregation.

¶ 16    This in no way denigrates the religious instruction that CKC provides to the children at Calvary. However, this type of voluntary instructional/ministry/social setting does not come within the scope of the Code and its grant of immunity. Viewing the pleadings, admissions, depositions, and affidavits on file in the light most favorable to Brittany, we conclude as a matter of law that the trial court erred in determining that CKC was a "school" pursuant to section 24-24 of the Code and in granting summary judgment in favor of Calvary. Therefore, we reverse the trial court's grant of summary judgment and remand the cause for further proceedings.

¶ 17    Reversed and remanded.